**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SECURITIES & EXCHANGE COMMISSION, | |
| Plaintiff, | Civil Action No. 23-3848 (MAS) (RLS) |
| v. | **MEMORANDUM OPINION** |
| ELIYAHU WEINSTEIN, *et al.*, | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court upon the United States's ("Government") Motion for Leave to Intervene and for a Stay. (ECF No. 26.) Defendant Aryeh L. Bromberg ("Bromberg") opposed (ECF No. 35),[1] and the Government replied (ECF No. 38). The Court has carefully considered the submissions of the parties and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Government's Motion to Intervene and to Stay Civil Discovery is granted.

## I.     BACKGROUND

### A.     Factual Background

This case is a civil enforcement action ("Civil Case") filed by the SEC against a number of individual defendants regarding a "multi-million dollar Ponzi-like fraud scheme" that defrauded at least 150 investors out of a total of at least $38 million. (Compl. ¶¶ 1, 8, ECF No. 1.) According

---

[1] The other defendants in this action have not opposed the Government's Motion to Intervene and to Stay Civil Discovery. Plaintiff Securities and Exchange Commission ("SEC") also did not file an opposition or response.

to the Complaint, the alleged scheme was orchestrated by Defendant Eliyahu Weinstein ("Weinstein") and carried out by Weinstein and his five co-Defendants: Bromberg, Joel L. Wittels ("Wittels"), Richard M. Curry ("Curry"), Christopher J. Anderson ("Anderson"), and Alaa Mohamed Hattab ("Hattab") (collectively, "Defendants"). (*Id.* at ¶¶ 1-8.) In or about November 2021, Weinstein, Bromberg, and Wittels began their alleged fraudulent scheme to raise funds from investors to finance transactions for their entity, Optimus Investments, Inc. ("Optimus"). (*Id.* ¶ 2.) In January 2022, Anderson and Curry formed Tryon Management Group, LLC ("Tryon") to raise investment capital for Optimus's purported deals by selling short-term promissory notes. (*Id.* ¶ 3.) From at least January 2022 through the present, Defendants allegedly schemed to mislead investors and prospective investors regarding the profitability of purported Optimus deals to induce sales of Tryon promissory notes, as well as convince existing noteholders to delay repayment of the notes and/or roll over their investment into other Optimus deals. (*Id.* ¶ 4.) Defendants are also alleged to have concealed Weinstein's identity and previous criminal record (relating to fraud) from investors in their allegedly fraudulent scheme. (*Id.* ¶¶ 5-7.)

The SEC brings claims against Defendants for: (1) violations of Section 17(a) of the Securities Act of 1933 ("Securities Act"); (2) violations of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder; and (3) aiding and abetting the violations of the Securities Act and Exchange Act. (*Id.* ¶¶ 9-11.)

**B.     Procedural History**

Some of the allegations in this action overlap with active criminal cases filed in this District against the same individual defendants. *See United States v. Eliyahu Weinstein, Aryeh L. Bromberg, Joel L. Wittels, Shlomo Erez, and Alaa Mohamed Hattab*, Mag. No. 21-11371 (AME) (the "Weinstein, et al. Case"); *United States v. Richard M. Curry*, Crim. No. 23-689 (MAS) (the

"Curry Criminal Case"); and *United States v. Christopher Anderson*, Crim. No. 23-684 (MAS) (the "Anderson Criminal Case") (collectively "Criminal Cases").[2] The pending Criminal Cases charge each of the Defendants[3] with fraud and other offenses arising from the same scheme charged in the SEC Complaint. (Gov't's Moving Br. 2, ECF No. 26.)

On July 19, 2023, Weinstein and Bromberg were arrested by federal law enforcement and appeared before Magistrate Judge Tonianne J. Bongiovanni, who ordered Weinstein to be detained and set conditions of release for Bromberg. (*Id.*) Both Wittels and Hattab self-surrendered thereafter and were released on bail after their initial appearances. (*Id.*) On August 30, 2023, Curry and Anderson each pled guilty to engaging in a conspiracy to commit securities fraud. (*Id.*)

The Government states that the Defendants are required to file an answer to the Complaint in the Civil Case, the deadline for which has not yet elapsed. (*Id.*) The Civil Case's discovery process would commence thereafter. (*Id.*)

The Government filed its motion for leave to: (1) intervene in the Civil Case pursuant to Federal Rule of Civil Procedure[4] 24; and (2) stay further proceedings and discovery in the Civil Case. (*See id.*) In essence, the Government seeks to intervene for the limited purpose of staying the Civil Case.[5] (*Id.* at 3.) Specifically, the Government asserts that a stay is necessary to "preserve the integrity of the investigation and prosecution of the Criminal Cases, to advance the public

---

[2] The docket numbers for the Criminal Cases are based on the Government's Moving Brief. (*See generally* Gov't's Moving Br. 1-2.)

[3] Bromberg notes, however, that several defendants in the Criminal Cases are not named in the Civil Case. (Bromberg's Opp'n Br. 3., ECF No. 35.)

[4] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

[5] In its motion, the Government argues that it is entitled to intervene in the Civil Case on two grounds: (1) intervention as of right pursuant to Rule 24(a); or (2) permissive intervention pursuant to Rule 24(b). (*Id.*)

interest, and to prevent Defendants from circumventing the narrow confines of criminal discovery through broad civil requests and related litigation." (*Id.* at 1.)

The SEC and Defendants, including Bromberg, do not oppose the Government's motion to intervene. Bromberg opposed, however, arguing that the Government's motion to stay is premature and should be denied. (*See generally* Bromberg's Opp'n Br.) As such, the Court only considers the parties' arguments pertaining to the Government's motion for a stay.

## II.  **LEGAL STANDARD**

A stay is not constitutionally required when a civil action overlaps with a pending criminal proceeding, but "may be warranted in certain circumstances." *Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998). "[A] stay of a civil proceeding is an extraordinary remedy and is not favored." *Forrest v. Corzine*, 757 F. Supp. 2d 473, 476 (D.N.J. 2010) (citing *Landis v. N. Am. Co.*, 229 U.S. 248, 254 (1936)). "However, a court has the discretion to stay a case if the interests of justice so require." *Id.* (citing *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970)). In deciding whether to grant a stay, the Court considers:

> (1) the extent to which the issues in the criminal and civil cases overlap; (2) the status of the case, including whether the defendants have been indicted; (3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay; (4) the private interests of and burden on defendants; (5) the interests of the court; and (6) the public interest.

*Walsh Sec., Inc.*, 7 F. Supp. 2d at 527.

## III.  **DISCUSSION**

In his opposing brief, Bromberg does not dispute the first and second factors because: (1) Bromberg agrees with the Government that the issues raised in the Criminal Cases overlap with the issues in the Civil Case; and (2) Bromberg has been charged in the criminal complaint. (Bromberg's Opp'n Br. 6.) The Court, therefore, addresses the remaining factors in turn.

A.      **Prejudice to Plaintiff**

Here, the SEC has not filed an opposition or response to the Government's request for a stay and thus has not argued that it will be prejudiced by staying the Civil Case. This factor, therefore, weighs in favor of granting a stay. *See Sec. & Exch. Comm'n v. Fishoff*, No. 15-3725, 2016 WL 1262508, at *4 (D.N.J. Mar. 31, 2016) (holding the same).

B.      **Private Interests and Burden on Defendants**

First, Bromberg argues that delay of the Civil Case will make it harder for him to defend himself because witnesses' memories fade and evidence becomes stale. (Bromberg's Opp'n Br. 11 n.3.) As an initial matter, however, "the Speedy Trial Act ensures that the Criminal Case will proceed expeditiously" and thus "the Court does not give much weight to the potential for fading witness recollection." *Fishoff*, 2016 WL 1262508, at *4; *see also Walsh Sec., Inc.*, 7 F. Supp. 2d at 527 (quoting *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203 (1989) (noting that harm arising from delay is "reduced [after an indictment] due to the promise of a fairly quick resolution of the criminal case under the Speedy Trial Act.")).

Of critical importance under this factor is that Defendants, including Bromberg, may be at risk for self-incrimination.[6] Although the Fifth Amendment protects individuals from "compelled self-incrimination," the prohibition against adverse inferences is applicable to only criminal actions. *See RAD Servs., Inc. v. Aetna Cas. & Sur. Co.*, 808 F.2d 271, 274 (3d Cir. 1986). In short, "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). It follows that permitting discovery in the Civil Case would indeed

---

[6] Strangely, Bromberg's opposing brief does not seem to consider that the stay would help prevent Bromberg's risk of self-incrimination. (*See generally* Bromberg's Opp'n Br.)

place Defendants in a position where they would have to choose between waiving their Fifth Amendment rights and defending themselves in the Civil Case. (Gov't's Reply Br. 5, ECF No. 38 (quoting *Walsh*, 7 F. Supp. 2d at 528).) *See Fishoff*, 2016 WL 1262508, at *3 ("[A]bsent a stay, the [defendants] may be forced to choose between incriminating themselves by participating in discovery or being subject to adverse inferences if they refuse to make requested disclosures."). Notably, only two defendants—Curry and Anderson—have pled guilty to engaging in a conspiracy to commit securities fraud, and thus the remaining Defendants still risk self-incrimination absent a stay. (*See* Gov't's Moving Br. 2.)

Moreover, prior to sentencing, "there is a risk that disclosures in the Civil Case may cause the Court to vacate the plea agreements." *Fishoff*, 2016 WL 1262508, at *3 (citing *Gov't Emps. Ins. Co. v. Zuberi*, No. 15-4895, 2015 WL 5823025, at *7 (D.N.J. Oct. 1, 2015) ("[E]ven though there is no criminal trial pending for [m]oving [d]efendants, the state court judge could theoretically vacate the plea agreement [at the time of sentencing] based on admissions made in the civil action.")).

Based on self-incrimination and Fifth Amendment concerns, the Court finds that this factor leans heavily in favor of granting the stay.[7]

**C.     Interests of the Court**

Bromberg sets forth a number of arguments under the fifth factor, all of which the Court finds unconvincing.

---

[7] To the extent that Bromberg suggests that the SEC should voluntarily dismiss its action "without prejudice to refile it when the criminal matter is resolved," (Bromberg's Opp'n Br. 12-13), the Court finds such argument unconvincing. Other than generally arguing that it was the SEC's proactive decision to "bring this action now despite the fact that it did not have to do so," Bromberg does not cite any case law to demonstrate that such a mandate is preferred or necessary. (*Id.*)

First, Bromberg seemingly argues that the Court, for justiciability reasons, must allow the case to proceed and reject the Government's motion to stay because it is premature and "no discovery has been served or produced by any party since the onset of this litigation." (Bromberg's Opp'n Br. 4, 7-8.) Bromberg avers that, at this stage of the proceedings, Defendants must either respond to the Complaint or move to dismiss the action, neither of which requires civil discovery. (*Id.* at 7.) Bromberg fails, however, to cite any authority that the lack of discovery in a civil proceeding parallel to a criminal case necessitates denial of a stay.[8] In the same vein, Bromberg argues that the Court's interest is to allow the matter to proceed without a stay until there is actually a legitimate concern. (*Id.* at 9.) To buttress his argument, Bromberg relies upon cases in which a court rejected a stay because a stay would potentially be for an indefinite duration.[9] (*Id.*) Here,

---

[8] Alternatively, Bromberg asserts that the Court can adequately address the Government's concerns regarding discovery by issuing a limited protective order or "stag[ing] discovery" to avoid particularly sensitive or prejudicial issues. (Bromberg's Opp'n Br. 7-8.) Bromberg cites *Forrest v. Corzine*, but fails to recognize that the case is not substantively relevant or similar to the instant case. (*See id.* at 8 (citing *Forrest*, 757 F. Supp. 2d. at 477).) In *Forrest*, the City of Camden requested a stay of a case in which a pro se litigant asserted misconduct against five Camden police officers. 757 F. Supp. 2d at 474-75. There, the court denied the stay because Camden was not the subject of a criminal investigation or prosecution, and "Camden does not run the risk that it may waive its Fifth Amendment rights or expose itself to criminal liability because of its civil testimony." *Id.* at 477. The court, accordingly, found that it was feasible to make limited adjustments to discovery based on the case's factual circumstances, as opposed to staying the entire case. *Id.*

[9] Bromberg cites *De'Omilia Plastic Surgery, PC v. Sweeton*, but fails to recognize that the stay in that case was denied because "there remain[ed] the 'potential' that [d]efendants may be prosecuted in other jurisdictions, [which] would obfuscate" judicial expediency. No. 12-6415, 2013 WL 6070037, at *5 (D.N.J. Nov. 18, 2013). Bromberg also cites *United States v. Banco Cafetero Int'l*, 107 F.R.D. 361, 366 (S.D.N.Y. 1985), a case decided before *Walsh Securities, Inc. v. Cristo Property Management, Ltd.*, 7 F. Supp. 2d 523, and is not a binding decision of this jurisdiction. The court in *Banco Cafetero Int'l* found that the scope and duration of the requested stay was too indefinite because the relevant criminal investigation had already been ongoing for 20 months and the criminal defendant had yet to be extradited, despite the filing of extradition papers seven months prior. *Banco Cafetero Int'l*, 107 F.R.D. at 366.

there is no showing that the stay will be indefinite; there are no facts that suggest that the Government's criminal proceedings will be delayed or are uncertain to continue.

Importantly, regarding Bromberg's argument that there is no guarantee that a stay pending the outcome of the criminal action will narrow or eliminate the issues in the Civil Case (*id.* at 13), the Court disagrees. This Court has previously found that it:

> is "within the power of the district court to balance 'competing interests' and decide that judicial economy would best be served by a stay of civil proceedings." *United States v. Mellon Bank, N.A.*, 545 F.2d 869, 872-73 (3d Cir. 1976). Here, given the substantial overlap between the Criminal Case and the Civil Case, the Court finds that it is likely that "resolution of the criminal case [will] moot, clarify, or otherwise affect various contentions in the [C]ivil [C]ase." *Id.* at 873.
>
> In addition, given the Fifth Amendment issues discussed above, absent a stay, the Court anticipates numerous discovery disputes, which will require judicial intervention. *See Gov't Emps. Ins. Co.*, 2015 WL 5823025, at *7 (concluding that "it would be more efficient to allow the criminal case to fully conclude before allowing the civil action to proceed" because, *inter alia*, without a stay the court would be forced to decide a "constant stream of privilege issues") (quoting *Walsh Sec., Inc.*, 7 F. Supp. 2d at 528-29).

*Fishoff*, 2016 WL 1262508, at *4 ("[T]he Court finds that it is in its interest to grant the stay."). The Court, accordingly, finds that the interests of the Court weigh towards granting the stay.

**D.    Public Interest**

Bromberg argues that the Government only offers generalized assertions of the public interest and fails to show with any particularity what "unjustified advantage" requires a stay of the Civil Case. (Bromberg's Opp'n Br. 4, 6.)

"Generally speaking, '[t]here is no harm to the public interest in granting a stay of the civil case.'" *Sec. & Exch. Comm'n v. Coburn*, No. 19-5820, 2019 WL 6013139, at *5 (D.N.J. Nov. 14, 2019) (quoting *Walsh Sec. Inc.*, 7 F. Supp. 2d at 529). Here, the Court finds that a stay would benefit the public because it would "allow[] the Government to conduct a complete, unimpeded

8

investigation into potential criminal activity." *Walsh Sec., Inc.*, 7 F. Supp. 2d at 529; *see also Sec. & Exch. Comm'n v. Manor*, No. 20-597, 2020 WL 3446306, at *2 (D.N.J. June 24, 2020) (noting that "protecting the Government's efforts to enforce the criminal laws" is in the public interest). The Court, accordingly, finds that there is sufficient support to show that a stay would benefit the public interest.

## IV.    CONCLUSION

In sum, the Court finds that the Government has shown that a stay of the Civil Case is warranted. Because the Government seeks to intervene for the limited purposes of staying the Civil Case, the Government's motion to intervene is also granted.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE